# Illinois Official Reports

## Appellate Court

*Certain Underwriters at Lloyd's, London v. Reproductive Genetics Institute*,
2018 IL App (1st) 170923

| | |
|---|---|
| Appellate Court Caption | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Plaintiff-Appellant, v. REPRODUCTIVE GENETICS INSTITUTE, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-0923 |
| Filed | March 9, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-3963; the Hon. Brigid M. McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Burke, Wise, Morrissey & Kaveny, LLC, of Chicago (Brian T. Monico, of counsel), for appellant.<br><br>Enterprise Law Group, LLP, of Chicago (Jon K. Stromsta, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Delort concurred in the judgment and opinion. |

¶ 1    Plaintiff, Certain Underwriters at Lloyd's, London (Lloyd's), appeals from the dismissal of its amended complaint, which sought contribution against the defendant, Reproductive Genetics Institute (Genetics Institute). On appeal, the plaintiff argues that the trial court improperly dismissed its complaint because neither the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/5 (West 2016)) nor case law prohibits its contribution claim. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3    This contribution claim arises from a settlement in an Oklahoma state court action against Lloyd's insured, The New England Cryogenic Center (NECC), a Massachusetts company that collects and sells human sperm. In 1999, NECC purchased the assets of Snake River Technology, d/b/a Rocky Mountain Cryobank (Cryobank), a corporation in the business of fertility assistance through cryopreservation. Its principal place of business was Wyoming. The Cryobank sent sperm donor samples to the Genetics Institute, an Illinois corporation that conducts genetic testing, to determine if the sperm donation samples contained the delta-F508 mutation for cystic fibrosis. In 1992, the Genetics Institute sent a letter to the Cryobank, stating that certain sperm samples, including donor N-170, did not have the delta-F508 mutation. NECC's purchase of the Cryobank in 1999 included the purchase of donor N-170's sperm, which NECC later advertised as free of the delta-F508 mutation.

¶ 4    In 2009, NECC sold donor N-170's sperm to an Oklahoma couple, the Kretchmars. Donor N-170's sperm was fertilized with Mrs. Kretchmar's egg, and she gave birth to a child with cystic fibrosis. Testing later revealed that donor N-170 is a carrier of the delta-F508 cystic fibrosis gene mutation.

¶ 5    On October 21, 2011, the Kretchmars filed a lawsuit against NECC in Oklahoma state court, alleging that their child's cystic fibrosis was caused by the delta-F508 mutation in donor N-170's sperm. On July 5, 2012, the court in Oklahoma approved a settlement agreement reached between the Kretchmars and NECC. Lloyd's, as NECC's insurer, paid the settlement proceeds on behalf of NECC. The Genetics Institute was never made a party to the Oklahoma action.

¶ 6    On August 17, 2013, Lloyd's filed its initial complaint against the Genetics Institute in the circuit court of Cook County. The complaint sought to recover the settlement proceeds that Lloyd's had paid to settle the Kretchmar lawsuit in Oklahoma. The complaint had five counts: contribution, negligence, negligent misrepresentation, breach of warranty of merchantability, and breach of warranty for a particular purpose. The Genetics Institute filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). The circuit court granted the motion and dismissed the complaint without prejudice.

¶ 7    On June 26, 2014, Lloyd's filed an amended complaint, repleading the counts for contribution, negligence, and negligent misrepresentation, but replaced the two warranty counts with one count for breach of express warranty. The Genetics Institute again filed a motion to dismiss the complaint, pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)). Relying upon *Laue v. Leifheit*, 105 Ill. 2d 191 (1984), for the

proposition that a claim for contribution must be asserted in the underlying lawsuit, the trial court granted the Genetics Institute's motion and dismissed the complaint in its entirety, with prejudice.

¶ 8 Lloyd's filed a motion to reconsider, arguing, *inter alia*, that neither the Contribution Act nor *Laue* applies when the underlying action is in a different jurisdiction. The trial court denied the motion as to the contribution claim, stating: "whether or not defendant may have been subject to jurisdiction in the Oklahoma litigation is not a factor in dismissal of these counts under the *Laue* doctrine." The trial court, however, granted the motion to reconsider its dismissal of the count for breach of express warranty. Lloyd's subsequently filed a second amended complaint, repleading the contribution claim, along with an amended count for breach of express warranty. Again, the Genetics Institute filed a motion to dismiss the complaint pursuant to section 2-615.

¶ 9 On March 22, 2017, the trial court granted the Genetics Institute's motion to dismiss the second amended complaint. Lloyd's then filed a notice of appeal, challenging the trial court's dismissal of its contribution claim.[1]

¶ 10                                ANALYSIS

¶ 11 We note that we have jurisdiction to review the trial court's final order dismissing the complaint, as the notice of appeal was timely filed. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 12 Lloyd's asserts that the trial court erred by interpreting *Laue* to require that a claim for contribution must be brought in the underlying lawsuit, even when the underlying litigation commenced in a jurisdiction outside of Illinois. Lloyd's argues that neither case law nor the Contribution Act prohibit it from filing a contribution claim in a new action where the Genetics Institute was not subject to the jurisdiction of the court in the underlying action. Specifically, Lloyd's claims that *Laue* cannot apply to the facts of this case because the court in Oklahoma did not have personal jurisdiction over the Genetics Institute; thus, it was impossible for Lloyd's to have asserted its contribution claim against the Genetics Institute in the underlying lawsuit. Lloyd's further argues that public policy considerations support the filing of a separate contribution action in Illinois because there would be no additional burden, other than on Lloyd's itself, and there is no risk of inconsistent verdicts because there was a settlement in the underlying Oklahoma action.

¶ 13 A motion to dismiss brought pursuant to section 2-615 challenges the legal sufficiency of a complaint by alleging defects on its face. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009). A motion to dismiss pursuant to section 2-615 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.* We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-615. *Id.* Further, our analysis involves statutory interpretation, which is a question of law that we also review *de novo*. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009). Section 5 of the 1992 version of the Contribution Act stated: "A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." 740 ILCS 100/5 (West 1992). In *Laue*, 105 Ill. 2d at

---

[1]On appeal, Lloyd's does not raise any issues regarding the trial court's dismissal of its breach of express warranty claim.

- 3 -

196, our supreme court held that section 5 of the Contribution Act requires parties to bring claims for contribution in the underlying action, stating, "We believe it is clear from the statutory language in section 5 that if there is a pending action *** then the party seeking contribution must assert a claim by counterclaim or by third-party claim in that action."

¶ 14     In light of the pronouncement by our supreme court, it is clear to us that the *Laue* court read section 5 of the Contribution Act literally and simply in determining that a claim for contribution *must* be brought in the pending, underlying action. The court did not discuss any exceptions or other factors for consideration. Moreover, contrary to argument by Lloyd's, nothing in the *Laue* opinion indicates that the *Laue* court presumed that the trial court in the underlying action would have had personal jurisdiction over a third-party defendant.

¶ 15     In an apparent response to *Laue*, the legislature enacted Public Act 89-7 (eff. Mar. 9, 1995) (amending 740 ILCS 100/5), which allowed a contribution claim to be brought in a separate action even if not filed in the pending, underlying litigation. See *Harshman v. DePhillips*, 218 Ill. 2d 482, 502 (2006). However, that amendment was declared unconstitutional by our supreme court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Notwithstanding the supreme court's ruling of unconstitutionality in *Best*, the legislature has not made any amendments to section 5 of the Contribution Act. If the legislature intended to allow contribution claims that were not filed in the underlying action, it could have done so in the 21 years since the *Best* decision.

¶ 16     Further, we find our supreme court's decision in *Harshman*, 218 Ill. 2d 482, to be instructive. In that case, the plaintiffs were sued for negligence in the United States District Court for the Northern District of Indiana. *Id.* at 484. The district court denied the plaintiffs leave to file a third-party complaint against the defendant. *Id.* The plaintiffs then filed a separate contribution action against the defendant in the circuit court of Cook County. *Id.* The defendant filed a motion to dismiss, which was denied by the circuit court. *Id.* However, our appellate court granted the defendant's petition for leave to appeal to address the certified question of whether Illinois law permits a party to bring a contribution claim in a separate proceeding after a court of another jurisdiction has denied the party leave to file the claim in the underlying proceeding. *Id.* This court answered the certified question in the negative, relying on *Laue*. *Id.* at 487. The plaintiffs then appealed to the Illinois Supreme Court. *Id.* at 488. In affirming the appellate court, the supreme court stated:

> "This court will not read exceptions, conditions, or limitations into a statute which the legislature did not express if the statutory language is clear and unambiguous. *** We are not unmindful of the possibility that a court of another jurisdiction might deny an Illinois defendant leave to file a contribution claim in a pending action, despite the requirement of section 5, in an instance where an Illinois court would be more sensitive to the effect of the statute's application. However, we are unconvinced that, in enacting section 5, the legislature intended the actions taken by plaintiffs in this case to constitute the assertion of a contribution claim by third-party complaint in the pending lawsuit." *Id.* at 501.

¶ 17     *Harshman* illustrates that the rule of *Laue* is strictly applied, even if the court in the underlying action denied a plaintiff's attempt to bring a contribution claim. Lloyd's argues that *Laue* cannot apply because the court in Oklahoma did not have personal jurisdiction over the Genetics Institute, and thus, the court there would have denied its claim for contribution. That is sheer speculation, as, unlike in *Harshman*, there is no showing that Lloyd's attempted to

bring a contribution claim in the Oklahoma litigation. In any case, our supreme court in *Harshman* made it clear that section 5 *strictly* requires a party to file a claim for contribution in the underlying action and that the rule does not deviate, even when the original court denies the claim seeking contribution. Clearly, the ruling in *Harshman* yielded a harsh result, although the plaintiff in that case attempted to comply with section 5 of the Contribution Act by trying to file the contribution action in the underlying lawsuit. In this case, Lloyd's made no such attempt. Thus, even assuming that the contribution claim would have been denied by the Oklahoma court because of lack of personal jurisdiction, that affords no relief to Lloyd's, as *Laue* and the Contribution Act strictly required Lloyd's to bring its claim for contribution in the original, underlying lawsuit in Oklahoma.

¶ 18 Further, we disagree with Lloyd's that public policy considerations support the filing of a separate action in Illinois. Our supreme court in *Laue* identified several public policy considerations that support barring contribution claims that are not brought in the underlying litigation. These considerations include additional burdens on parties and the courts and inconsistent verdicts. *Laue*, 105 Ill. 2d at 196-97. Those public policy concerns also apply here. It is clear that a separate lawsuit would create an additional burden on the parties and court system. Moreover, the argument that *Laue* does not apply when there is a settlement in the underlying case has already been rejected by this court in *Lesnak v. City of Waukegan*, 137 Ill. App. 3d 845, 846 (1985) ("[i]n referring to 'a pending action,' the supreme court [in *Laue*] did not distinguish between actions that proceed to trial and those that do not").

¶ 19 Finally, we note that Lloyd's has argued that, in the alternative, this court should "undertake to correct the errors in *Laue*" and determine that it was wrongly decided by the supreme court. It is well settled that this court is bound to follow the supreme court's precedent, and "when our supreme court has declared law on any point, only [the supreme court] can modify or overrule its previous decisions, and all lower courts are bound to follow supreme court precedent until such precedent is changed by the supreme court." *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 734 (2006). Although Lloyd's makes a strong and reasonable public policy argument, which highlights a harsh result, we are bound to follow *Laue*. The argument is plainly not supported by current Illinois case law. The argument, taken to its logical conclusion, calls upon this court to overrule existing case law established by our supreme court. This we cannot do.

¶ 20 CONCLUSION

¶ 21 For the foregoing reasons, we affirm the circuit court of Cook County's dismissal of Lloyd's complaint.

¶ 22 Affirmed.