2022 IL App (1st) 201214

No. 1-20-1214

Opinion filed March 29, 2022.

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| MARILYN BRAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2017 L 6402 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation; | ) | |
| SL CIVIC WACKER LLC; and LYRIC OPERA OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (The City of Chicago, a Municipal Corporation, Defendant | ) | |
| and Counterplaintiff-Appellant; SL Civic Wacker LLC, and | ) | The Honorable |
| Lyric Opera of Chicago, Defendants and Counterdefendants- | ) | Arnette R. Hubbard, |
| Appellees). | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     Marilyn Bray, who is not a party to this appeal, was injured when she tripped and fell on an uneven seam in a sidewalk owned by the City of Chicago (City). The sidewalk was located above underground storage vaults that were used by SL Civic Wacker LLC (SL Civic), and its

tenant, Lyric Opera of Chicago (Lyric Opera). At the time of Bray's fall, SL Civic held a valid public way use permit from the City for the vaults, but it allowed Lyric Opera to use the vaults pursuant to the terms of their lease agreement. Due to her injuries, Bray filed a premises liability action against the City, SL Civic, and Lyric Opera, alleging that they negligently maintained the sidewalk by failing to repair the defect.

¶ 2      The City, however, subsequently filed counterclaims against SL Civic and Lyric Opera (counterdefendants), respectively, seeking contribution and indemnity for all or a portion of any judgment entered in favor of Bray in the underlying action. According to the City, they were liable for any negligence to Bray because the Chicago Municipal Code (Municipal Code) provisions governing both public way and subsidewalk space use required them to maintain the sidewalk over the vaults.

¶ 3      SL Civic moved to dismiss the City's counterclaim against it, while Lyric Opera moved for summary judgment, both arguing they owed Bray no duty of care, statutory or otherwise, regarding the maintenance, repair, and/or use of the sidewalk where she fell. The circuit court agreed and granted their respective motions. The court therefore dismissed with prejudice the City's counterclaim against SL Civic and entered summary judgment in favor of Lyric Opera on the City's counterclaim against it.

¶ 4      In this interlocutory appeal, the City maintains that a duty of care was imposed on SL Civic and Lyric Opera, respectively, stemming from their permit and lease obligations to comply with all Municipal Code provisions. For the reasons that follow, we affirm in part and reverse in part the circuit court's judgment and remand for further proceedings.

¶ 5                                      I. BACKGROUND

¶ 6      The following relevant facts were gleaned from the parties' pleadings, depositions, affidavits, and other supporting documents and were all presented to the court below.

¶ 7      On March 15, 2017, Bray was walking eastbound on West Madison Street in downtown Chicago when she tripped and fell on an uneven seam in the sidewalk, which was owned by the City. The sidewalk was located next to the Civic Opera Building over some underground storage vaults that were used by the building's owner, SL Civic, and its tenant, Lyric Opera. Although the City owned the vault space, it had previously issued SL Civic a public way use permit to construct and maintain the vaults.

¶ 8      As we will discuss below, SL Civic was obligated under the terms of the permit to comply with "the provisions of [s]ection 10-28-015 and all other required provisions of the Municipal Code" governing, among other things, public way use liability. See Chicago Municipal Code § 10-28-015 (amended Oct. 14, 2021). Lyric Opera, on the other hand, was not a permit holder for the vaults, but it used them for storage pursuant to the terms of its lease agreement with SL Civic. The lease agreement, however, expressly required Lyric Opera to "comply with all Laws," thereby including those laws set forth in the Municipal Code, which will also be discussed in greater detail below. Bray sustained injuries from the fall including fractures to her kneecap and elbow, among other injuries.

¶ 9      A few months after her fall, Bray filed a premises liability action against the City, alleging that the City's negligence in failing to repair the sidewalk defect was the direct and proximate cause of her injuries. Bray, however, later amended her complaint to add negligence claims against SL Civic and Lyric Opera, respectively, alleging that they were either a "permit holder and/or beneficiary of a permit for the use of a vaulted sidewalk" and, therefore, they had a duty to maintain the sidewalk in a reasonably safe condition.

¶ 10    We note, however, that Bray's negligence claim against SL Civic was initially dismissed without prejudice for failing to allege facts that showed SL Civic "assumed control" of the sidewalk above the vaults, but she eventually refiled the claim, setting forth additional allegations against SL Civic. Specifically, Bray asserted that even if SL Civic did not assume control of the sidewalk, it was obligated to maintain the sidewalk under section 10-28-540 of the Municipal Code (Chicago Municipal Code § 10-28-540 (amended Nov. 9, 2016)), which requires "[e]very person using the space under any sidewalk" to "keep such sidewalk in good and safe condition and repair."

¶ 11    Meanwhile, the City filed two-count counterclaims against SL Civic and Lyric Opera, respectively, seeking contribution and indemnity for all or a portion of any judgment entered in favor of Bray in the underlying action. The City alleged that counterdefendants were liable for any negligence to Bray because each had a duty stemming from their contractual obligations to maintain the sidewalk over the vaults in a reasonably safe condition, that they breached that duty by not repairing the purported sidewalk defect, and that the breach proximately caused Bray's injuries.[1] In support, the City attached to its counterclaims a copy of SL Civic's public way use permit, providing the vaults had to be maintained in accordance with all City ordinances and the Municipal Code.

¶ 12                          A. SL Civic's Motion to Dismiss

¶ 13    SL Civic, thereafter, moved to dismiss the City's counterclaim against it pursuant to section 2-615 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-615 (West 2018)), asserting that neither its permit nor the Municipal Code imposed on it a duty to maintain and

---

[1]We note that the circuit court originally dismissed without prejudice the City's counterclaim against SL Civic when it dismissed Bray's negligence claim against SL Civic; however, the City filed an amended counterclaim against SL Civic, as relevant here, after Bray refiled her negligence claim against SL Civic. See *supra* ¶ 10.

repair the sidewalk over the vaults it used. For the same reasons, SL Civic also moved to dismiss Bray's negligence claim against it, albeit under section 2-619 of the Civil Code (*id.* § 2-619).

¶ 14    Following a hearing, the circuit court granted the dismissal motions, holding that SL Civic owed no duty of care to Bray because "nothing show[ed] the permit required SL Civic to maintain the sidewalk above the vaults" or that "SL Civic assumed control over the sidewalk." The court concluded that SL Civic, therefore, could not be held liable for Bray's injuries. Consequently, the court entered an order on January 28, 2020, dismissing with prejudice Bray's negligence claim against SL Civic, as well as the City's counterclaim against SL Civic for contribution and indemnity.

¶ 15                    B. Lyric Opera's Summary Judgment Motion

¶ 16    Lyric Opera, meanwhile, moved for summary judgment on the City's counterclaim against it, and on Bray's negligence claim against it. Lyric Opera argued in its summary judgment motion against the City, as relevant here, that it was entitled to judgment as a matter of law because it had no legal duty under either its lease agreement with SL Civic or the Municipal Code to repair the sidewalk over the vaults it used for storage. In support, Lyric Opera attached to its motion an affidavit from its chief financial and administrative officer, Roberta Lane. Her affidavit stated that while Lyric Opera used "some of the space within the subsidewalk vaults as a storage area," it "never under[took] to repair or maintain the vaults."

¶ 17    Lyric Opera also supported its motion with a copy of its lease agreement with SL Civic.[2] The lease agreement provided that Lyric Opera was responsible for installing "any membrane it require[d] to prevent leakage from sidewalks above any below-ground vault area it may be using for storage or equipment or other purposes." Additionally, Lyric Opera was responsible "for

_____

[2]We note that Lyric Opera entered into the lease agreement with SL Civic's predecessor in interest, EOP Operating Limited Partnership.

removing and replacing any such sidewalk to install a membrane to prevent and stop leakage." According to Lyric Opera, this did not impose any legal duty on it to maintain and repair the sidewalk over the vaults where Bray fell since it never installed an anti-leak membrane under that sidewalk.

¶ 18    In response, the City asserted that a duty of care arose based on Lyric Opera's use of the vaults below the sidewalk where Bray fell and the terms of its lease agreement whereby Lyric Opera effectively agreed to maintain those vaults to prevent any water leakage inside them. The City argued this, at the very least, created a genuine issue of material fact as to whether Lyric Opera had sufficient control over the space to give rise to a duty of care, precluding summary judgment. The City supported its response with an affidavit from the assistant chief engineer of its transportation department, Luis Benitez. His affidavit stated that the sidewalk where Bray fell was "specifically designed" to act as a roof to the underground vaults whose structure was "solely for the benefit of the owner of the Civic Opera Building and its occupants/tenants."

¶ 19    The circuit court ultimately disagreed, concluding that while Lyric Opera might have benefitted from using the vaults, this did not establish that it had a duty to maintain and repair the sidewalk over them. In reaching its conclusion, the court found there was no evidence presented that Lyric Opera either "assumed control over the City sidewalk area at issue" or was obligated "to maintain or repair the concrete sidewalk above the vaults." And without such evidence, Lyric Opera could not be held liable for Bray's injuries. The court thus entered an order on March 25, 2020, granting Lyric Opera's motions for summary judgment against both Bray and the City, respectively.

¶ 20    While Bray's negligence claim against the City was still pending, the circuit court entered an order on October 16, 2020, finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar.

8, 2016), that there was no just reason for delaying enforcement or appeal of the court's dismissal order and summary judgment order entered in favor of SL Civic and Lyric Opera, respectively, on the City's counterclaims against them for contribution and indemnity.[3] The City now appeals.

¶ 21                                    II. ANALYSIS

¶ 22     On appeal, the City challenges the circuit court's judgment dismissing with prejudice its counterclaim against SL Civic, seeking contribution and indemnity for all or a portion of any judgment entered in favor of Bray. A motion to dismiss brought under section 2-615 of the Civil Code attacks the legal sufficiency of a claim by alleging defects on its face. *Certain Underwriters at Lloyd's, London v. Reproductive Genetics Institute*, 2018 IL App (1st) 170923, ¶ 13. Such a motion should not be granted unless it is clearly apparent from the pleadings that no set of facts can be proved that would entitle the claimant to recovery. *Id.*

¶ 23     In reviewing the sufficiency of a claim, we accept all well-pleaded facts set forth therein as true. *Marshall v. Burger King Corporation*, 222 Ill. 2d 422, 429 (2006). The essential question then is whether those allegations, construed in the light most favorable to the nonmoving party, are sufficient to establish a claim upon which relief may be granted. *United City of Yorkville v. Fidelity & Deposit Co. of Maryland*, 2019 IL App (2d) 180230, ¶ 59. We review a circuit court's dismissal of a claim pursuant to section 2-615 of the Civil Code *de novo*. *Id.* Furthermore, our analysis in this case involves statutory construction and contract interpretation, which present questions of law that we also review *de novo*. *Sandlin v. Harrah's Illinois Corp.*, 2016 IL App (3d) 150018, ¶ 10.

---

[3]We note that the circuit court initially denied the City's motions requesting Rule 304(a) findings for the court's interlocutory dismissal and summary judgment orders, but the court later granted the City's motions to reconsider those rulings.

¶ 24    Additionally, the City asserts that the circuit court erroneously entered summary judgment in favor of Lyric Opera. The City, however, only challenges the court's summary judgment ruling with respect to the contribution count of its counterclaim against Lyric Opera. Summary judgment should not be granted unless the pleadings, depositions and admissions on file, together with any affidavits, construed strictly against the moving party, reveal that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. Stated differently, if the record reveals a dispute as to any material issue of fact, summary judgment must be denied regardless of the lower court's belief that the movant will or should prevail at trial. *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525 (1995). Like the circuit court's dismissal order, we review the court's summary judgment ruling *de novo*. *Monson*, 2018 IL 122486, ¶ 12.

¶ 25                    A. The City's Counterclaim Against SL Civic

¶ 26    We begin by addressing the circuit court's dismissal of the City's counterclaim against SL Civic, seeking contribution and indemnity for all or a portion of any judgment entered in favor of Bray. A defendant in a lawsuit may bring a claim against its codefendants by way of a counterclaim, sometimes referred to as a crossclaim. *Indian Harbor Insurance Co. v. MMT Demolition, Inc.*, 2014 IL App (1st) 131734, ¶ 34. Section 2-608(a) of the Civil Code provides:

> "[a]ny claim by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim." 735 ILCS 5/2-608(a) (West 2018).

In this regard, the defendant who filed a counterclaim against another codefendant is considered a "plaintiff" or "counterplaintiff," while the codefendant who responded to that claim is considered a "defendant" or "counterdefendant." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 443, 837 N.E.2d 16, 22 (2005).

¶ 27    Contribution and indemnity are the basis of most counterclaims, providing mutually exclusive remedies for allocating the plaintiff's damages. *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 502 (1996). While contribution apportions the distribution of loss among joint tortfeasors based on relative degrees of fault, indemnity shifts the entire loss to the joint tortfeasor who was actually at fault. *Id.* The Joint Tortfeasor Contribution Act provides there is a right of contribution among joint tortfeasors who are potentially liable to the injured party, even though judgment has not yet been entered against any or all of them. 740 ILCS 100/2(a) (West 2016); *Ryan v. Yarbrough*, 355 Ill. App. 3d 342, 345 (2005). A well-pleaded contribution claim must allege facts that establish the counterdefendant is liable in tort to the original plaintiff. *Yarbrough*, 355 Ill. App. 3d at 345. ¶ 29.

¶ 28    Indemnity, on the other hand, is a common law doctrine that requires a pretort relationship between the counterplaintiff and counterdefendant and a qualitative distinction between their conduct. *Kerschner*, 282 Ill. App. 3d at 503. The right to indemnity may be express, like in a contractual provision as relevant here, or may be implied in law, arising from the parties' conduct. *Id.* at 502. To be legally sufficient, an indemnity claim must allege a pretort relationship between the counterplaintiff and the counterdefendant upon which a duty to indemnity may be predicated. *Id.* at 504.

¶ 29    In this case, the City's counterclaim against SL Civic for contribution and/or indemnity alleged that SL Civic was liable for any negligence to Bray because the permit required it to

maintain and repair the sidewalk over the vaults where she fell. The City thus had to allege facts that showed SL Civic had a duty to maintain that sidewalk in a reasonably safe condition, that it breached that duty by not repairing the purported defect, and that the breach proximately caused Bray's injuries. See *Marshall*, 222 Ill. 2d at 430 (noting the elements of a common-law negligence action). Whether a duty exists is typically a question of law for the court to decide, whereas whether a defendant breached its duty and whether the breach was the proximate cause of the plaintiff's injuries are generally factual matters for the jury to decide. *Id.* The existence of duty likewise depends upon whether the parties stood in such a relationship to one another that the law imposed an obligation on the defendant to act reasonably for the protection of the plaintiff. *Id.* at 436.

¶ 30    After carefully reviewing the record in this case, we believe the circuit court erred in holding that SL Civic owed no duty of care, statutory or otherwise, to Bray regarding the maintenance, repair, and/or use of the sidewalk where she fell. As will be shown below, the scope of SL Civic's duty was governed by the terms of its permit to use the vaults below the sidewalk. Because the City and SL Civic correctly agree that the permit constituted an enforceable contract between them, we apply traditional rules of contract interpretation. See *Block v. Lohan Associates, Inc.*, 269 Ill. App. 3d 745, 756 (1993) (stating, "[w]hen negligence is based upon a contractual obligation, the scope of duty is determined by the terms of the contract").

¶ 31    A court's primary objective in construing a contract is to ascertain and give effect to the parties' intentions as expressed through the contract's language. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Additionally, a contract must be construed as a whole, such that each provision is viewed in light of the other provisions. *Id.* Where, as here, the words employed in the contract

are clear and unambiguous, they must be given their plain, ordinary and popular meaning. *Id.* Contrarily, if the contract's language is susceptible to more than one meaning, it is ambiguous. *Id.* While a court determines whether a contract is ambiguous as a matter of law, the resolution of any ambiguity is a question of fact that must be decided by a jury. *Pepper Construction Co. v. Transcontinental Insurance Co.*, 285 Ill. App. 3d 573, 575-76 (1996).

¶ 32    As set forth above, SL Civic obtained a public way use permit from the City for the vaults underneath the sidewalk where Bray fell, a copy of which was presented to the court below. The permit, by its own terms, was "issued and accepted upon the condition that said vault[s] shall be constructed and maintained in accordance with and subject to all conditions, stipulations and requirements of the ordinances of the City of Chicago." Additionally, the permit stated, in relevant part, that "[p]ermission and authority are hereby given and granted to [SL Civic], upon the terms and subject to the conditions of this ordinance to maintain and use, as now constructed, three (3) Vault(s) under the public right-of-way adjacent to its premises known as 20 N. Wacker Dr." The permit contained a description of each underground vault and specifically stated, "[t]his grant of privilege in the public way shall be subject to the provisions of [s]ection 10-28-015 and all other required provisions of the Municipal Code."

¶ 33    Section 10-28-015(e) of the Municipal Code provides, as relevant here, that "[e]ach public way use and the structures and appliances authorized by the permit shall be maintained and used in accordance with all applicable laws, including the ordinances of the city." Chicago Municipal Code § 10-28-015(e)(1) (amended Oct. 14, 2021). That section further provides, "[t]he *permittee shall keep that portion of the public way* in, *over*, under or adjacent to *the public way use in good condition and repair*, safe for public travel, and free from snow, ice and debris to the satisfaction of the Commissioner of Transportation." (Emphases added.) *Id.* This language

expressly required SL Civic to keep the public sidewalk "over" the vaults identified in its public way use permit "in good condition and repair." Such a requirement is tantamount to a legal duty of a care.

¶ 34    Here, the circuit court determined that "nothing show[ed] the permit required SL Civic to maintain the sidewalk above the vaults." Yet, the court ignored that the permit was "subject to the provisions of [s]ection 10-28-015 *** of the Municipal Code," which clearly imposed that maintenance requirement on SL Civic. While we make no determination as to whether SL Civic satisfied that requirement, as it is a factual matter for the jury to decide, we conclude that the City alleged sufficient facts to establish that SL Civic owed a duty of care to Bray with respect to the maintenance, repair and/or use of the sidewalk over the vaults where she fell.

¶ 35    Having determined that a duty of care was imposed on SL Civic by way of its permit obligations, we need not reach the parties' arguments concerning whether a duty either arose from common law or was voluntarily assumed under the Restatement (Second) of Torts. As previously stated, if a defendant's duty stems from a contractual obligation, which is the case here, then the scope of that duty is limited to the contractual language. See *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, ¶ 58; *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 89 Ill. App. 3d 640, 643-44 (1980). And because the facts in this case showed SL Civic owed Bray a duty of care, it could be held liable for negligence. Accordingly, we conclude that the City stated a viable right to contribution for a portion of any judgment entered in her favor.

¶ 36    With that in mind, we now turn subsection (e)(6) of section 10-28-015 of the Municipal Code, providing:

"the permittee shall indemnify, defend, keep and save harmless the City *** against all claims, liabilities, judgments, costs, damages and other expenses which may in any way arise or accrue against, be charged to or recovered from the City *** in consequence of the permission given by the public way use permit, or any act or thing done or omitted or neglected to be done by the permittee, its agents or employees in and about the construction, reconstruction, maintenance, operation, use or removal of the authorized public way uses and structures or appliances thereof, operation or restoration of the public way as required, including those arising from any personal injuries or deaths or damage or destruction of property." Chicago Municipal Code § 10-28-015(e)(6) (amended Oct. 14, 2021).

Based on this language, we cannot say that the City failed to state a viable right to indemnity for a judgment entered in favor of Bray. The City's counterclaim alleged that SL Civic was liable to Bray for any negligence because both the permit and Municipal Code imposed a duty on SL Civic to maintain the sidewalk over the vaults where she fell in a reasonably safe condition, that SL Civic breached that duty by not repairing the purported defect, and that the breach proximately caused Bray's injuries.

¶ 37   Since we already determined there were sufficient facts to establish that SL Civic owed Bray a duty of care with respect to the sidewalk, the City's allegations that SL Civic breached that duty and that the breach proximately caused her injuries, if proven, would entitle the City to recovery under an indemnity theory. At the very least the City's allegations, taken as true, are sufficient to withstand dismissal under a section 2-615 motion. Accordingly, we conclude that the circuit court erred in dismissing the City's counterclaim against SL Civic, seeking

- 13 -

contribution and indemnity for all or a portion of any judgment entered in favor of Bray; thus, we reverse the court's judgment dismissing that claim.

¶ 38                    B. The City's Counterclaim Against Lyric Opera

¶ 39    We now address the circuit court's summary judgment ruling entered in favor of Lyric Opera. As stated, the City on appeal only challenges the court's summary judgment ruling with respect to the contribution count of its counterclaim.

¶ 40    To establish a right to contribution, the City here had to show that Lyric Opera had a duty to maintain the sidewalk where Bray fell in a reasonably safe condition, that Lyric Opera breached that duty by not repairing the alleged defect, and that the breach proximately caused Bray's injuries. See *Guerino v. Depot Place Partnership*, 191 Ill. 2d 314, 320 (2000) (interpreting the Joint Tortfeasor Contribution Act to allow a right of contribution against a party who was potentially liable in tort to the underlying plaintiff); *Marshall*, 222 Ill. 2d at 430 (noting the elements of a common-law negligence action); see also *supra* ¶¶ 28, 30 (discussing the legal elements of contribution and negligence claims, respectively). Although the City, as the nonmovant, was not required to prove its case at the summary judgment stage, it had to present some factual basis that would arguably entitle it to judgment at trial. *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 397 (2000). In other words, for the City to survive summary judgment, it had to identify some evidence from which a jury could find that Lyric Opera owed Bray a duty of care, that it breached that duty, and that the breach proximately causing her injuries. *Id.*

¶ 41    Here, the circuit court determined that Lyric Opera was entitled to judgment as a matter of law because none of the evidence presented showed that Lyric Opera either "assumed control over the City sidewalk area at issue" or was obligated "to maintain or repair the concrete sidewalk above the vaults" to give rise to a duty of care. We disagree. As set forth above, the

lower court was presented with a copy of Lyric Opera's lease agreement with SL Civic. See *supra* ¶ 17. Section 6.3 of that agreement expressly required Lyric Opera to "comply with all Laws," including those set forth in the Municipal Code, a compilation of City laws. See *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 22-23 (2001) (noting that City ordinances are law).

¶ 42    Section 10-28-540 of the Municipal Code provides, as relevant here, that "[e]very person using the space under any sidewalk shall at his own expense and at all times keep such sidewalk in good and safe condition and repair and clear and free from all snow, ice, dirt, filth or other obstructions or encumbrances." Chicago Municipal Code § 10-28-540 (amended Nov. 9, 2016). In addition, the Municipal Code defines " 'Subsidewalk Space Use' " as "the use of any subsidewalk space, or the construction or maintenance of any structure thereunder, or disturbing the sidewalk on the public way, for the purpose of constructing or maintaining any vault or structure thereunder, or any coalhole, trapdoor or other opening therein or thereon." Chicago Municipal Code § 10-28-010(a) (amended July 21, 2021). This language clearly required Lyric Opera, who admitted to using the vaults located in "the space under" the sidewalk where Bray fell, to "keep such sidewalk in good and safe condition and repair."

¶ 43    Lyric Opera, nonetheless, argues in its appellate brief that these provisions do not apply to it because, unlike SL Civic, it never used the vault space "for the purpose of constructing or maintaining" the vaults. This argument does not hold water since Lyric Opera was obligated to maintain the vaults under the terms of its lease agreement with SL Civic. As previously stated, the lease agreement contained an anti-leak provision that stated Lyric Opera was responsible for installing "any membrane it require[d] to prevent leakage from sidewalks above any below-ground vault area it may be using for storage or equipment or other purposes." Furthermore,

Lyric was responsible "for removing and replacing any such sidewalk to install a membrane to prevent and stop leakage." Because this language provided that Lyric Opera, not SL Civic, was legally responsible for any water intrusion into the vaults underneath the sidewalk, the language effectively obligated Lyric Opera to maintain those vaults in order to prevent such an intrusion.

¶ 44    That being said, we reject Lyric Opera's assertion that even if it was required to maintain the vaults under the Municipal Code, it cannot be held liable for Bray's injuries because the City's duty of care regarding the sidewalk was nondelegable. Lyric Opera already agreed to remove or replace "any such sidewalk to install a membrane" if necessary to prevent water leakage inside the vaults, thereby essentially forfeiting any claim that the City was solely responsible for maintaining and repairing the sidewalk. Simply put, Lyric Opera cannot challenge the legality of its lease and Municipal Code obligations when it agreed to comply with them.

¶ 45    For the same reasons, we reject Lyric Opera's attempts to avoid its maintenance obligations under the relevant Municipal Code provisions on the basis that those provisions cannot subject it to private tort liability because they were intended to benefit the City, not the public. But *cf. Thiede v. Tambone*, 196 Ill. App. 3d 253, 259-60 (1990) (finding the city ordinance did not impose a duty of care on the owner of a property abutting the public sidewalk to maintain and repair that sidewalk where the ordinance was intended to benefit the municipality, not the public); *Summers v. City of Springfield*, 33 Ill. App. 3d 474, 476 (1975) (similar); *Klikas v. Hanover Square Condominium Ass'n*, 240 Ill. App. 3d 715, 719-20 (1992) (similar); *Gilmore v. Powers*, 403 Ill. App. 3d 930, 939 (2010) (similar). Lyric Opera agreed to comply with the Municipal Code provisions in exchange for using the vaults under the sidewalk where Bray fell, and incidentally, Lyric Opera benefitted from such use.

¶ 46    Under the circumstance in this case and taking the facts in the light most favorable to the City, as we must, we cannot say as a matter of law that Lyric Opera owed no duty of care to Bray regarding the maintenance, repair, and/or use of the sidewalk where she fell or that it cannot be held liable to her for negligence. Whether Lyric Opera breached that duty, and if so, whether the breach proximately caused Bray's injuries are matters for the jury to decide. In any event, summary judgment should not have been granted to Lyric Opera in this case because the City presented sufficient evidence that could arguably entitle it to recovery under a contribution theory. We therefore reverse the circuit court's summary judgment ruling entered in favor of Lyric Opera on the contribution count of the City's counterclaim against it.

¶ 47    Because we again determined that a duty of care arose based on contractual obligations, *i.e.*, Lyric Opera's lease and Municipal Code obligations, we need not address whether a common law duty likewise arose. See *Mickens*, 2019 IL App (1st) 180156, ¶ 58 (noting that where, as here, a duty stems from a contractual obligation, then the scope of that duty is limited to the contractual language); *Schoondyke*, 89 Ill. App. 3d at 643-44 (same).

¶ 48                                    CONCLUSION

¶ 49    For the foregoing reasons, we reverse the circuit court's judgment dismissing with prejudice the City's counterclaim against SL Civic, seeking contribution and indemnity for all or a portion of any judgment entered in favor of Bray. In addition, we reverse the circuit court's summary judgment ruling entered in favor of Lyric Opera on the contribution count of the City's counterclaim. The circuit court's summary judgment ruling entered in favor of Lyric Opera on the indemnity count of the City's counterclaim is affirmed. We remand for further proceedings consistent with our disposition.

¶ 50    Affirmed in part and reversed in part; cause remanded.

---

**No. 1-20-1214**

---

| | |
|---|---|
| **Cite as:** | *Bray v. City of Chicago*, 2022 IL App (1st) 201214 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-L-6402; the Hon. Arnette R. Hubbard, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Celia Meza, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Elizabeth Mary Tisher, Assistant Corporation Counsel, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Dan Alexander and Mike Mayerck, of Maron Marvel Bradley Anderson & Tardy LLC, of Chicago, for appellee SL Civic Wacker, LLC. |
| | Kurt E. Olsen, of Krakar & Olsen, of Chicago, for other appellee. |

---