BITUMINOUS CASUALTY CORPORATION, Plaintiff, v. COMMERCIAL UNION INSURANCE COMPANY, Defendant and Third-Party Plaintiff (Swenson Company *et al.*, Third-Party Defendants; Swenson Company *et al.*, Counterplaintiffs-Appellees; Safety Mutual Casualty Corporation, Counterdefendant-Appellant).

First District (3rd Division)   No. 1—92—2913

Opinion filed June 28, 1995.

Nancy J. Arnold, Philip W. Domagalski, and David T. Nani, all of Kralovec, Marquard, Doyle & Gibbons, of Chicago, for appellant.

Lewis, Overbeck & Furman, of Chicago (Paul V. Esposito, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

This appeal arises out of a breach of contract counterclaim brought by the Swenson Company (Swenson) and the Swenson/Bolander Joint Venture (Joint Venture) against one of their insurers, Safety Mutual Casualty Corporation (Safety). The underlying suit was a wrongful death action in which three construction companies, Swenson, the Eric Bolander Construction Company (Bolander), and Joint Venture, had been joined as third-party defendants. The underlying suit and all claims except this one have been settled and are not part of this appeal. Safety is appealing the summary judgment the trial court granted in favor of Swenson and Joint Venture against Safety, for breach of contract which included damages of $32,885.85, the amount of attorney fees incurred during litigation with Commercial Union Insurance Company (Commercial Union).

The main issue in the breach of contract action is whether the trial court erred when it granted summary judgment in favor of Swenson and Joint Venture on their contract claim, which alleged that Safety breached its contractual obligation by failing and refusing to reimburse Swenson and Joint Venture in the underlying action. The complaint alleged that as a result of the breach, Swenson and Joint Venture incurred damages in the form of attorney fees related to Commercial Union's third-party complaint.

For the reasons that follow, we affirm the summary judgment entered in favor of Swenson and the Joint Venture.

In 1982, Swenson and Bolander formed Joint Venture for the purpose of a project with the Illinois State Toll Highway Authority

(Authority) involving bridge repair on Highway Interstate 294. On September 3, 1982, a worker, Tony Coe, was struck and killed by an Illinois Central Gulf (ICG) train. Subsequently, the administrator of Coe's estate brought a wrongful death action against the ICG, the train engineer, and Joint Venture. The ICG and the engineer then brought a third-party complaint for contribution against Swenson, Bolander, and Joint Venture on the basis that Coe was their employee.

Eventually, the underlying litigation was settled, but it spawned various insurance coverage disputes. Bituminous Casualty Corporation (Bituminous) filed a declaratory judgment complaint against Commercial Union, Swenson, Bolander, ICG, the train engineer, and the administrator of Coe's estate in which it requested a judicial declaration of the rights and liabilities of the parties and their insurers.

Commercial Union then filed a third-party complaint against Swenson, Bolander, Bituminous, and Safety on the basis that Coe was an employee of both Swenson and Joint Venture. Commercial Union alleged that it had no obligation to defend or indemnify Swenson or Joint Venture because its comprehensive liability policy specifically excluded coverage for bodily injury to an insured's employee arising out of his employment. The policy limit was $1 million. Commercial Union also sought a declaratory judgment that Safety had a duty to defend and indemnify Swenson and Joint Venture for the underlying action.

After cross-motions for summary judgment were filed in Commercial Union's third-party action, Safety responded to a letter from Commercial Union. In that letter dated January 5, 1990, Safety analyzed the pending claims against Swenson and Joint Venture. Safety stated that Commercial Union had the duty to defend Joint Venture as to all pending allegations, Commercial Union's policy was a primary insurance policy, Joint Venture was not a co-insurer with Commercial Union, and Safety's obligations arose only after Commercial Union's policy limits for indemnity and Joint Venture's self-insured retention had been exhausted.

Later, after Commercial Union accepted the defense of Swenson and Joint Venture in the underlying declaratory judgment suit, Safety wrote a letter to the attorneys for Swenson and Joint Venture dated April 3, 1990, in which it stated that it was not obligated to indemnify Joint Venture if a verdict was entered against it on two of three counts of the third-party complaint against Joint Venture. Safety stated that its policy would not provide coverage; instead, Commercial Union's policy did provide coverage.

The letter of April 3, 1990 in part states:

"For the reasons articulated in my letter of January 5, 1990 to Commercial Union's attorney, it is Safety Mutual's position that it does not have the duty to indemnify the joint venture in the event a verdict is returned against it on either Count II of the Plaintiff's First Amended Complaint or Count VI of the Second Amended Third Party Complaint. *** Safety Mutual's policy is an excess aggregate policy that contains no defense obligations. Therefore, Swenson retained counsel to defend it against the third party action in accordance with its obligations as a self-insured. *** [I]n no event, would it be covered by Safety Mutual's excess employers liability coverage."

After receiving the letter, Swenson and Joint Venture filed a counterclaim against Safety. Count I alleged that if Commercial Union succeeded with its action, Swenson and Joint Venture were entitled to indemnity from Safety. Count II alleged that Safety breached its contractual duties because it failed and refused to cover Swenson and Joint Venture, resulting in attorney fees expended in the dispute with Commercial Union.

Subsequently, Safety paid Commercial Union $60,000 in settlement of all its claims against Swenson, Joint Venture, and Safety. Neither Swenson nor Joint Venture participated in the negotiations or paid any money in the settlement.

The settlement mooted the indemnity claim against Safety, but not the contract claim on which the trial court granted summary judgment in favor of Swenson and Joint Venture, including $32,885.85 in damages, which were the attorney fees incurred in their dispute with Commercial Union after the letter of April 3, 1990.

On appeal, Safety asserts that it is not liable for breach of a duty to reimburse Swenson and Joint Venture because they did not fulfill the condition precedent, which was that they expend money in settling the underlying claim before Safety had any obligation to reimburse them. The only duty of Safety was to indemnify the insureds.

There is no dispute that Swenson and Joint Venture did not fulfill the condition precedent. Commercial Union had defended Joint Venture under a strict reservation of rights. Pursuant to that reservation, Commercial Union paid $98,333.32 in indemnity costs and $40,944.62 in defense costs as part of a settlement of the underlying lawsuit. Ultimately, Safety paid Commercial Union $60,000 to settle its declaratory judgment action against Swenson, Joint Venture, and Safety.

Swenson and Joint Venture argue that they were not required to perform the condition precedent of expending money to settle the

claim because Safety breached its contract by anticipatory repudiation when it wrote the two letters stating that it would not reimburse Swenson and Joint Venture until Commercial Union paid out its entire general liability policy. As a result of this alleged breach, Swenson and Joint Venture contend that they incurred damages because they were forced to pay attorney fees in their dispute with Commercial Union. In the letter dated January 5, 1990, Safety's attorneys clearly stated its position that it was not obligated to pay anything until after Commercial Union's policy was exhausted, and Joint Venture's self-insured retention amount was also exhausted. If Swenson and the Joint Venture were not going to be indemnified by Safety, they had to take action against Commercial Union to force it to absorb the entire amount of the settlement and costs.

Swenson, which was self-insured for the purposes of worker's compensation liability, purchased an "Aggregate Excess Workers' Compensation Reinsurance Agreement" from Safety. Later, Joint Venture was added to the policy as an additional insured. In that policy, Safety agreed to indemnify Swenson and Joint Venture as employers for payments of workers' compensation benefits, employers' liability claims, and defense costs in excess of a $185,000 aggregate self-insured retention amount. All parties agree that Swenson has satisfied the aggregate self-insured retention amount.

■ The Safety policy is an excess policy, which involves unique and special coverage involving different risks than a primary policy. (*United States Fidelity & Guaranty Co. v. Continental Casualty Co.* (1990), 198 Ill. App. 3d 950, 955, 556 N.E.2d 671.) When the protection of the primary policy ends, the protection under the excess policy begins. (*United States Fidelity & Guaranty Co.*, 198 Ill. App. 3d at 955.) For a reinsurer to be contractually obligated to pay money under its excess policy, a determination must be made regarding liability on the underlying lawsuit. (*United States Fidelity & Guaranty Co.*, 198 Ill. App. 3d at 954.) Thus, the duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that give rise to a claim under the policy. *Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 203-04, 579 N.E.2d 322.

■ We affirm the trial court's finding that the letter of April 3, 1990, was an anticipatory breach of contract because Safety did manifest a definite and unequivocal intent not to render its performance under the contract once the time fixed in the contract arrived. *Leazzo v. Dunham* (1981), 95 Ill. App. 3d 847, 420 N.E.2d 851.

Summary judgment is properly granted only where there is no issue as to any material fact and the moving party is entitled to judg-

ment as a matter of law. (*Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 293, 560 N.E.2d 586.) There is no issue as to any material fact, and Swenson and Joint Venture were entitled to judgment as a matter of law. Therefore, summary judgment in favor of Swenson and Joint Venture was not an abuse of the trial court's discretion. *Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 956, 578 N.E.2d 33.

■ It has been held that where one party to a contract sues another for breach of contract, the plaintiff who prevails in the lawsuit cannot recover attorney fees, unless there is a clause in the contract or a statute permitting recovery. Appellee Swenson agrees with this principle, but states that where there is a breach of contract and the wronged party is forced to incur attorney fees and costs as a direct result of the breach, the wronged party is entitled to be reimbursed.

A case supporting Swenson's argument is *Philpot v. Taylor* (1874), 75 Ill. 309. In that case, the plaintiff was sued by a third party for specific performance of a contract which was entered into by the defendants, who had no authority to act as the plaintiff's real estate agents. The court held that plaintiff was entitled to recover attorney fees and costs because these damages were a direct result of the defendants' conduct.

In *Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41, the court held that the plaintiff could not recover attorney fees and costs for obtaining a judgment against a defendant for fraud. The court explained:

> "[W]here the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees. (*Philpot v. Taylor*, 75 Ill. 309; *McEwen v. Kerfoot*, 37 id. 530; *Himes v. Keighblingher*, 14 id. 469.) *** While it is recognized that where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others, there may be a recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation, [citation] yet the rule is equally well established that where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action." *Ritter*, 381 Ill. at 554-55.

Although generally courts follow the "American Rule" and do not award attorney fees to the prevailing party, the court in the case of *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47, did

not apply the "American Rule" because of the facts in that case. The defendant in that case negligently failed to file estate and inheritance tax returns on time. The plaintiff had to retain another attorney to file the returns. The plaintiff filed a legal malpractice action seeking as damages the attorney fees that were paid to the other attorney. The court held that the plaintiff was entitled to recover the damages. The *Sorenson* court explained:

> "It is clear from this statement that the policy against awarding attorneys' fees was intended to apply only where a successful litigant seeks to recover his costs in maintaining the lawsuit. We do not believe it was intended to preclude a plaintiff from recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorneys' fees. The plaintiff here is not attempting to recover the attorneys' fees she expended in bringing this lawsuit. Rather, she seeks to recover losses incurred in trying to obtain refunds of tax penalties which were assessed against her solely as a result of the defendant's negligence. Had the plaintiff been forced to hire an accountant to repair the damage caused by the defendant's conduct, she would undoubtedly have been entitled to recover the accountant's fee as an ordinary element of damages. There is no basis in logic for denying recovery of the same type of loss merely because the plaintiff required an attorney instead of an accountant to correct the situation caused by the defendant's neglect. In holding the defendant liable for the plaintiff's losses, we are not violating the policy against 'penalizing' a litigant for defending a lawsuit. We are simply following the general rule of requiring a wrongdoer to bear the consequences of his misconduct." *Sorenson*, 90 Ill. App. 3d at 372.

In this cause, the parties agree that Swenson had paid $185,000, the full amount of the aggregate self-insured retention amount required under the policy. Safety's excess policy had begun to cover Swenson and the Joint Venture. There is no requirement under the Safety policy that Swenson had to seek payment from any other insurer before the coverage under Safety's policy began. Under the Safety policy, once Swenson and/or the Joint Venture paid any amount for an employer liability claim and defense costs, Safety was obligated to reimburse them. Safety could have waited for the trial court to decide whether Commercial Union was entitled to be reimbursed because the injured person was indeed employed by both Swenson and the Joint Venture. Safety believed that the injured person was only employed by one of the insureds and not by both insureds and therefore Commercial Union was not entitled to be reimbursed and Safety would not have to pay anything. However,

Safety did not wait for the court to render judgment. Instead, Safety wrote the letter of April 3, 1990, stating that it had no duty to indemnify the Joint Venture and that in no event would Swenson be covered by Safety's policy.

It has been stated that the purpose of a declaratory judgment action is to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations. The parties involved in the controversy can then learn the consequences of their actions before they act. (*Waste Management, Inc.*, 144 Ill. 2d at 205-06.) In this declaratory judgment action, Safety did not wait for the trial court to render a decision declaring the rights of the parties. Instead, Safety decided that it would not indemnify Swenson and Joint Venture.

There was no issue of material fact as to whether or not there was an anticipatory breach by Safety. There was no denial that the letter was sent and received. There was no conflicting testimony of witnesses regarding Safety's communication to Swenson. The letter and the policy were all that was necessary for the trial court to decide whether there was an anticipatory repudiation of the contract by Safety at the motion for summary judgment stage of the proceedings.

■ Illinois law permits a party to recover damages from a wrongdoer for anticipatory breach of contract. However, for there to be an anticipatory breach, the law requires that there be a positive and unequivocal manifestation of a party's intent not to render the performance promised under the contract when the time fixed in the contract arrives. (*Student Transit Corp. v. Board of Education* (1979), 76 Ill. App. 3d 366, 395 N.E.2d 69.) When a party receives notice of the other party's intention not to perform, the promisee may elect to treat the repudiation as a breach putting an end to the contract. (*Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 373 N.E.2d 863.) A promisee may pursue such an election by either promptly filing suit or by detrimentally changing his position in reliance on the repudiation. (*Builder's Concrete Co.*, 58 Ill. App. 3d at 105, 373 N.E.2d at 867-68.) In this case, Swenson and the Joint Venture elected to file suit.

■ Safety argues that Swenson and the Joint Venture are not entitled to reimbursement because they did not fulfill the condition precedent of paying money in settlement of Commercial Union's claim. However, as stated in the case of *Builder's Concrete Co.* (58 Ill. App. 3d at 106), "When one party to a contract repudiates his contractual duties before time for performance the other party may elect to treat the contract as ended. In such cases the nonbreaching

party is not required to tender performance or to comply with conditions precedent." The rule is also stated in 17 Am. Jur. 2d *Contracts* § 449 (1964). When Safety repudiated the policy in this case, the insureds no longer had to fulfill the condition precedent requirement under the policy. It was no longer necessary that the insureds pay any money in settlement of Commercial Union's claim. This factor is not necessary for our decision in this case because Swenson and Joint Venture did not make a claim that they had performed under the terms of the policy. Their claim was for anticipatory breach of contract, which does not depend upon the insured fulfilling the condition precedent contained under the terms of the policy.

In the case of *Horton v. Allstate Insurance Co.* (1984), 125 Ill. App. 3d 1034, 467 N.E.2d 284, one of the issues in the case was whether summary judgment on a insured's claim of anticipatory breach of contract could be based on a letter sent by Allstate. Allstate's letter rejected the plaintiff's proof of loss statements and requested additional documentation in support of the insured's claim. The court held that the very wording of the letter was thoroughly inconsistent with the repudiation of liability. The court further stated that there was no evidence from which a jury could conclude that Allstate did not intend to fulfill its obligations under the insurance policy. Summary judgment for Allstate was held to be proper.

Safety's letter of April 3, 1990, was not like the letters an insured wrote in the case of *Waste Management, Inc.* (144 Ill. 2d 178, 579 N.E.2d 322), where the court stated that the letters did not deny coverage, but instead indicated a continuing evaluation and concerns about defense coverage. *Waste Management, Inc.*, 144 Ill. 2d at 207.

■ We hold that the trial court was correct when it found that Safety's letter of April 3, 1990, was a clear and unequivocal repudiation of Safety's obligations under the policy. Safety's statements in the letter, that it did not have a duty to indemnify the Joint Venture in the event a verdict was returned against it and that it hereby declined coverage as to Swenson, are not doubtful or indefinite statements that Safety may or may not perform. (*Alguire v. Walker* (1987), 154 Ill. App. 3d 438, 506 N.E.2d 1334.) Swenson and the Joint Venture properly elected to treat Safety's repudiation of the policy as an anticipatory breach of contract and file a claim against Safety.

Safety's refusal to indemnify the Joint Venture and Swenson forced them to fight Commercial Union over coverage. The trial court's finding as to the $32,885.85 expended by the Joint Venture for attorney fees and costs is not in dispute. We hold that the trial court's judgment against Safety for that amount was proper.

Based on the foregoing, we affirm the circuit court's judgment.

AFFIRMED.

GREIMAN, P.J., and RIZZI, J., concur.