**Audrey CLAMAGE, Plaintiff,**

v.

**Mark G. DALEN, Defendant.**

**No. 96 C 2135.**

United States District Court, N.D. Illinois, Eastern Division.

March 17, 1997.

John Michael Murphy, Sidney M. Kaplan, Baker & McKenzie, Chicago, IL, for Plaintiff.

Kenneth T. Kubiesa, Pamela L. Beck, Kubiesa, Power & Cronin, Ltd., Oakbrook Terrace, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Audrey Clamage, signed a Guaranty Agreement (the "Guaranty") in which she agreed to guarantee two payments which her spouse owed to the defendant, Mark G. Dalen, as part of a stock purchase agreement. Seeking to avoid this obligation, Ms. Clamage filed suit to have the Guaranty declared unenforceable. In response, Mr. Dalen filed a counterclaim for anticipatory breach of the Guaranty. Presently before the Court are Ms. Clamage's motion to dismiss the counterclaim and Mr. Dalen's motion to dismiss Counts III and IV of the complaint. For the following reasons, Ms. Clamage's motion is granted, and Mr. Dalen's motion is granted in part and denied in part.

### Background

This dispute stems from the sale of two businesses which sell artificial flowers, plants and trees. Four documents involved in this transaction are of particular importance. First, on March 4, 1994, Mr. Dalen entered into a Stock Purchase Agreement (the "Purchase Agreement") with Edward Clamage, the plaintiff's spouse. In that Purchase Agreement, Mr. Dalen agreed to sell 500 of his shares in Metropolitan Plant & Flower, Inc. ("Metropolitan") and 1,500 of his shares in the Silkcorp Plant & Tree International Factory Outlet Franchising System ("Silkcorp") to Mr. Clamage. To ensure payment of the purchase price, Metropolitan signed a guaranty agreement ensuring the payment of the sums owed to Mr. Dalen by Mr. Clamage. In addition, Mr. Dalen also entered

into a consulting agreement and a covenant not to compete with Metropolitan.

One month later, the parties amended the Purchase Agreement (the "Amendment") in order to extend Mr. Clamage's payment schedule. As consideration for this Amendment, Ms. Clamage signed the Guaranty in which she guaranteed performance of two payments totaling $300,000 according to the schedule set forth in the Amendment. The Guaranty permitted Ms. Clamage to assert any defenses available to Mr. Clamage, Metropolitan or Silkcorp against Mr. Dalen.

The third document, a Subordination Agreement, was completed on April 18, 1994, in order to secure financing for Metropolitan and Silkcorp. Mr. Dalen agreed to subordinate the debt owed to him by Mr. Clamage, Metropolitan and Silkcorp to the debt owed by them to NBD Bank ("NBD") as a result of this new loan.[1] The Subordination Agreement provides that Mr. Dalen, as the creditor, would not "take any action to assert, collect or enforce the Subordinated Indebtedness against any party liable for same or any security interest in collateral."

In the fourth and final document, NBD assigned its rights and responsibilities under the Subordination Agreement to Metropolitan. Pursuant to a bankruptcy settlement agreement concerning NBD's loan to Metropolitan and Silkcorp,[2] NBD assigned its right, title and interest in several documents, including the Subordination Agreement, to Metropolitan in return for payments totaling $425,000. Mr. Clamage, Ms. Clamage, and Silkcorp all acknowledged and agreed to this assignment.

### Legal Sufficiency of the Counterclaim

■ A claim should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hi–Lite Prod. Co. v. American Home Prod.*

*Corp.*, 11 F.3d 1402, 1405 (7th Cir.1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Furthermore, the Court will assume that all of the plaintiff's factual allegations are true and will draw all reasonable inferences in favor of the plaintiff. *Ross v. Creighton University,* 957 F.2d 410, 411 (7th Cir.1992). Although Mr. Dalen is the named defendant, he will be treated as the plaintiff for purposes of resolving the motion to dismiss his counterclaim.

Mr. Dalen's counterclaim for anticipatory breach of the Guaranty is premised solely on Ms. Clamage's institution of this declaratory judgment suit. In Illinois an action for anticipatory breach requires a "positive and unequivocal manifestation of a party's intent not to render the performance promised under the contract when the time fixed in the contract arrives." *Bituminous Cas. Corp. v. Commercial Union Ins. Co.,* 273 Ill.App.3d 923, 210 Ill.Dec. 216, 221, 652 N.E.2d 1192, 1197 (1st Dist.1995). The mere filing of a suit challenging the interpretation or even validity of a contract, without more, does not constitute a party's clear and affirmative refusal to perform under the contract in the future. *See Commonwealth Edison Co. v. Decker Coal Co.,* 612 F.Supp. 978, 982 (N.D.Ill.1985); *Farwell Const. Co. v. Ticktin,* 84 Ill.App.3d 791, 39 Ill.Dec. 916, 924, 405 N.E.2d 1051, 1059 (1st Dist.1980). Mr. Dalen has alleged no actions or statements of Ms. Clamage, apart from the filing of this lawsuit, to support his anticipatory breach action. Consequently, Mr. Dalen's counterclaim is dismissed.

### Counts III and IV of the Complaint

■ Count III of the complaint seeks a declaration that the Guaranty is unenforceable based on the assignment of the Subordination Agreement to Metropolitan. The bankruptcy court, approving the settlement agreement between NBD and Metropolitan,

---

**1.** Notwithstanding Mr. Dalen's argument to the contrary, the Subordination Agreement attached to the amended complaint appears to name Mr. Clamage as a party. Although the copy of the Agreement is not perfectly legible, Mr. Clamage's name appears to be listed several lines below the "borrower" line with an asterisk because of lim-

ited space on the "borrower" line. In addition, Mr. Clamage's signature, as an individual, is at the bottom of the Subordination Agreement.

**2.** Metropolitan and Silkcorp sought Chapter 11 protection on February 14, 1996.

preserved for the benefit of Metropolitan all of NBD's claims and liens which were avoided due to the settlement. *In Re Metropolitan Plant & Flower, Inc.*, Ch. 11 Case No. 96 B 3816, slip op. at 12 (N.D.Ill. July 2, 1996). Metropolitan now possesses all of the rights and privileges contained in the Subordination Agreement, including the subordination of Mr. Dalen's debt. Mr. Dalen moves for dismissal of this count because he contends that Mr. Clamage and Ms. Clamage are not parties to the Subordination Agreement and that Mr. Clamage's personal debt as a result of the Stock Purchase Agreement is separate from any debt owed by Metropolitan. Therefore, he argues, the Subordination Agreement does not nullify the effect of the Guaranty which relates only to the Stock Purchase Agreement.

Mr. Dalen's arguments are rooted in two assumptions that I cannot make on this motion. First, as explained earlier, Mr. Clamage appears to be a party to the Subordination Agreement. If so, the personal debt that he owed to Mr. Dalen is covered by the terms of the Subordination Agreement. Mr. Dalen signed this agreement, which specifically stated that all indebtedness of the borrower to the creditor, as specified in all of the agreements between these parties, was subordinated. Second, Mr. Clamage's personal debt is linked to Metropolitan by means of another guaranty agreement. Contemporaneous with the execution of the Stock Purchase Agreement, Metropolitan signed a guaranty ensuring performance of the payments due Mr. Dalen from Mr. Clamage. Hence, Mr. Clamage and Metropolitan were involved in both the Subordination Agreement and the Stock Purchase Agreement with respect to the personal debt that Mr. Clamage owed for purchase of the stock.

These facts are important because of the language of the Guaranty. The Guaranty states that Ms. Clamage's obligation to pay Mr. Dalen is "subject to any rights or defenses that [Edward] Clamage, Metropolitan or Silkcorp may have either at the time of the execution of the [Stock Purchase] Agreement dated March 4, 1994, ... or in the future...." Thus, Mr. Clamage's status as a party to the Subordination Agreement and Metropolitan's ownership of the privileges and rights of that agreement may provide Ms. Clamage with a defense to Mr. Dalen's enforcement of the Guaranty. Since I cannot say that Ms. Clamage can prove no set of facts to support her claim, Count III will not be dismissed.

■ Count IV, on the other hand, fails because of Mr. Clamage's role in this transaction. Count IV alleges that the Stock Purchase Agreement constituted a fraudulent conveyance, and therefore, Ms. Clamage's Guaranty is unenforceable. Mr. Dalen seeks to dismiss this count because Ms. Clamage is not a creditor as required under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160 *et seq.* (the "Act"), and therefore cannot pursue a cause of action based on the Act.

The Act provides that a transaction may be fraudulent only "as to a creditor." 740 ILCS 160/5. In addition, Illinois courts have held that parties to a fraudulent transaction are bound by it and cannot use the Act as a shield against the fraudulent bargain. *Rozycki v. Gitchoff*, 180 Ill.App.3d 523, 129 Ill. Dec. 446, 448, 536 N.E.2d 130, 132 (5th Dist. 1989); *Robertson v. Robertson*, 123 Ill.App.3d 323, 78 Ill.Dec. 593, 602, 462 N.E.2d 712, 721 (5th Dist.1984); *Peric v. Chicago Title & Trust Co.*, 89 Ill.App.3d 271, 44 Ill.Dec. 568, 569, 411 N.E.2d 934, 935 (1st Dist.1980). Therefore, only the creditors of a party to a fraudulent conveyance may maintain an action under the Act.

Ms. Clamage cannot maintain her cause of action against Mr. Dalen in Count IV because she is not a creditor of Metropolitan or Silkcorp. Ms. Clamage does not allege anywhere in her Amended Complaint that she is a creditor, and none of the four agreements grant her creditor status. Metropolitan, Silkcorp, and Mr. Clamage were parties to the transaction. As parties they all are bound to the transaction and cannot use the Act as a defense. If Mr. Clamage, Metropolitan and Silkcorp have no defense, then Ms. Clamage cannot "borrow" any of their defenses pursuant to the Guaranty. Hence, Ms. Clamage may not pursue a fraudulent conveyance action for this transaction.

## Conclusion

The motions to dismiss Count IV of the amended complaint and the counterclaim are granted. The motion to dismiss Count III of the amended complaint is denied.