2023 IL App (1st) 230547

FIRST DISTRICT
THIRD DIVISION
August 30, 2023

No. 1-23-0547

| | | |
|---|---|---|
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, | ) ) ) | Appeal from the Circuit Court Cook County. |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 21 L 000621 |
| WALGREEN COMPANY and WALGREENS BOOTS ALLIANCE, INC., | ) ) ) | |
| Defendants and Third-Party Plaintiffs-Appellants | ) ) ) ) | |
| (Prime Therapeutics LLC, | ) ) | Honorable Caroline K. Moreland, |
| Third-Party Defendant-Appellee). | ) | Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Reyes and Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal case arises from the circuit court's order staying two indemnification counts

filed by third-party plaintiffs/defendants, Walgreen Company and Walgreens Boots Alliance,

Inc. (collectively, Walgreens), against third-party defendant, Prime Therapeutics LLC (Prime).

In the underlying action, plaintiff, Health Care Services Corporation (HCSC), filed a complaint

seeking damages for fraud, fraudulent nondisclosure, unjust enrichment, and related claims based

on allegations that Walgreens had engaged in a knowing and intentional scheme of improperly

reporting artificially inflated rates for prescription drugs dispensed to persons who had health

insurance through HCSC. HCSC further alleged that Walgreens inflated prices on millions of claims and obtained inflated reimbursements from HCSC.

¶ 2     Walgreens filed the third-party complaint at issue against Prime seeking contribution and indemnification for any judgment entered against Walgreens in the underlying action. Prime filed a motion to dismiss the third-party complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2020)). The trial court dismissed the contribution counts with prejudice and stayed the indemnification counts until HCSC's claims are resolved in the underlying action.[1]

¶ 3     Walgreens appeals, arguing that the trial court erred in staying its indemnity claims for several reasons: (1) the stay was against the public policy of simultaneous adjudication of third-party claims with the underlying claim, (2) the court improperly held that a stay was mandatory, (3) Prime did not properly move for a stay, (4) Prime failed to satisfy its burden by clear and convincing evidence, and (5) Walgreens's anticipatory repudiation claim is ripe for adjudication and not contingent on the resolution of the underlying claim.

¶ 4     Multiple cases have been filed against Walgreens related to the alleged misrepresentation of drug reimbursement prices, including the underlying case here and a consolidated federal case filed in the District Court for the Northern District of Illinois. See *BCBSM, Inc. v. Walgreen Co.*, No. 20 C 1853, 2022 WL 393596 (N.D. Ill. Feb. 9, 2022). In the federal case, Walgreens also filed a third-party complaint alleging contribution and indemnification against Prime, which the district court dismissed in February 2022. See *id.* Specifically, the court found the indemnification counts were premature because Walgreens had not yet incurred any liability in the underlying case. *Id.* at *10.

---

[1]The contribution counts are not part of the appeal and thus are only discussed as necessary for an understanding of this appeal.

¶ 5    HCSC filed its complaint against Walgreens in January 2021. HCSC administers and underwrites health plans in Illinois, Montana, New Mexico, Oklahoma, and Texas. Walgreens has been a network pharmacy for HCSC, which means that members of HCSC's health plans could use their prescription drug benefits at Walgreens stores and receive in-network pricing. Walgreens also offers a "Prescription Savings Club" (PSC) program, which makes prescription drugs more affordable for uninsured and underinsured consumers in the PSC.

¶ 6    When Walgreens dispenses a prescription to a health plan member, an electronic claim for reimbursement is sent to an intermediary, a pharmacy benefit manager (PBM). The PBM would then submit a claim for payment to HCSC. Prime was the PBM at all relevant times in the underlying action, which meant that HCSC paid Walgreens through Prime. HCSC alleged that Walgreens made false statements and omitted material facts about its usual and customary (U&C) prices, *i.e.*, the cash price of a prescription drug paid by an individual without insurance. The U&C price is the ceiling for a prescription drug. HCSC contended that Walgreens should have included the prices available to PSC members. HCSC further alleged that Walgreens knowingly and intentionally submitted inflated U&C prices for brand and generic drugs purchased by HCSC's members and caused hundreds of millions of dollars in excess reimbursements to be paid on claims from Walgreens. The underlying action remains pending in the circuit court.

¶ 7    In May 2022, Walgreens filed its third-party complaint for contribution and indemnification against Prime. Walgreens alleged that Prime was a joint tortfeasor in the underlying fraud claims and shares responsibility for some or all of HCSC's harm. As HCSC's intermediary, Prime adjudicates Walgreens's reimbursement claims on HCSC's behalf and determines each claim's appropriate disposition under the health plan's coverage standards.

Walgreens further asserted that it "neither transmits its U&C prices directly to [HCSC] nor receives reimbursements directly from [HCSC]." Walgreens transmits a U&C price and other claim-related information to Prime, Prime then allegedly transmits a U&C price and other claim-related information to HCSC, HCSC sends a reimbursement to Prime, and finally Prime sends the reimbursement to Walgreens.

¶ 8 Walgreens further alleged that due to its role as the intermediary, Prime knew and understood how both Walgreens and HCSC defined U&C prices and how much HCSC paid Walgreens for any reimbursement claims. The third-party complaint asserted that Prime was aware of Walgreens's U&C price reporting policies and practices and adjudicated Walgreens's reimbursement claims using Walgreens's allegedly false U&C prices, proximately harming HCSC and contributing to HCSC's loss.

¶ 9 The third-party complaint alleged multiple counts for contribution and indemnification, including five counts for contribution (one count for each state in which HCSC operates, *i.e.*, Illinois, Oklahoma, Texas, New Mexico, and Montana) and two counts for indemnification, one seeking a declaratory judgment and the other based upon a claim of anticipatory repudiation. Since this appeal only involves the indemnification counts, we address the allegations in the complaint for those two counts.

¶ 10 Both the declaratory judgment and anticipatory repudiation indemnification counts are based on the same allegations. The relationship between Walgreens and Prime is governed by a contract, dated March 1, 2008 (2008 contract). Section 8.2 of the 2008 contract contains an indemnification clause in which Prime agreed to:

> "indemnify and hold [Walgreens] harmless from and against all claims or suits asserted by a third party(ies) and related losses, damages and expenses, including

but not limited to reasonable attorney[ ] fees, costs and expenses to the extent they are arising out of or resulting from Prime's breach of or any negligent act or omission of Prime relating to this Agreement."

The 2008 contract defines U&C as "the amount charged to a cash customer by the dispensing pharmacy at the time of dispensing *** exclusive of sales tax charged to a Covered Person or other discounts that do not affect the total reimbursement amount claimed."

¶ 11     Walgreens alleged that if HCSC's claims are meritorious, then Prime breached its obligations under section 3.3 of the 2008 contract. Section 3.3 refers to marketing materials and provides as follows: "Prime will accurately describe and represent the role of [Walgreens] in providing services contemplated under this Agreement in all communications, including marketing and advertising materials, to Benefit Sponsors, potential Benefit Sponsors, and, if applicable, Covered Persons and potential Covered Persons." According to Walgreens, Prime breached this provision by "failing to accurately describe and represent to [HCSC] Walgreens' U&C price reporting practices for reimbursement claims submitted pursuant to the 2008 contract." Stated another way, Walgreens asserted that under section 3.3, Prime was required to accurately inform HCSC of Walgreens's U&C price reporting practices, including the fact that Walgreens excludes PSC prices from U&C.

¶ 12     Walgreens further alleged that Prime committed negligent acts or omissions in its performance as a PBM and in its claim adjudication services under the 2008 contract. Specifically, Walgreens asserted that Prime failed to inform HCSC of the following: (1) Walgreens's actual U&C reporting obligations, (2) Walgreens does not include PSC pricing in its U&C reporting, and (3) Prime's understanding of Walgreens's U&C reporting obligations. Further, Walgreens alleged that Prime failed to correct HCSC's "misapprehensions of

5

Walgreens's U&C reporting obligations." Additionally in both claims, Walgreens alleged that "Prime has anticipatorily repudiated its indemnification obligations, making clear that it has no intention of performing those obligations, ever."

¶ 13   In its prayer for relief seeking a declaratory judgment, Walgreens asked the court to enter judgment in its favor and declare that Prime "must indemnify and hold [Walgreens] harmless" against all damages, expenses, attorney fees, costs, liabilities, and other losses arising out of HCSC action or Prime's breach of, or any negligent act or omission related to the 2008 contract. Similarly in its prayer for relief for the anticipatory repudiation count, Walgreens requested judgment in its favor and against Prime "awarding" it damages, expenses, attorney fees, costs, liabilities, and other losses arising out of HCSC action or Prime's breach of, or any negligent act or omission related to the 2008 contract, "in an amount to be proven at trial."

¶ 14   In August 2022, Prime filed its motion to dismiss Walgreens's third-party complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2020)). Specifically, Prime argued that the indemnification counts should be dismissed, or in the alternative stayed, because the demand for indemnification was not ripe for adjudication. Prime contended that Walgreens was not yet liable for HCSC's claims and may never be. Thus, Prime's obligation to indemnify Walgreens was speculative.

¶ 15   In September 2022, Walgreens filed its response in opposition to Prime's motion to dismiss and argued that the trial court could and should hear the indemnification counts in the underlying action. According to Walgreens, the interests of judicial and party economy favor hearing the indemnification counts in the underlying action and turn on many of the same factual and legal issues as HCSC's claims against Walgreens. Walgreens contended that hearing the

claims in separate actions would waste judicial resources and risk inconsistent judgments. In its reply, Prime reiterated its assertion that the claims were premature.

¶ 16    Following oral arguments in February 2023, the trial court entered its memorandum opinion and order on Prime's motion to dismiss. The court observed that Walgreens had two options to pursue its indemnification claims, either file a third-party complaint or wait until the underlying action is resolved. The court found that Walgreens's indemnification counts were properly filed and could stand, but the court could not make a determination on the indemnity claims until the underlying claims of HCSC's complaint are resolved. The court concluded that the counts "must be stayed pending resolution of HCSC's claims." Additionally, the court dismissed the five contribution claims with prejudice, but as previously observed, the dismissals are not part of this appeal.

¶ 17    Walgreens filed an interlocutory appeal seeking a reversal of the trial court's stay on the indemnification counts against Prime. Pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), an appeal may be taken from an interlocutory order of the circuit court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." An order of the court staying proceedings pending the resolution of a related matter is injunctive in nature and reviewable under Rule 307(a)(1). *TIG Insurance Co. v. Canel*, 389 Ill. App. 3d 366, 371 (2009). Accordingly, this court has jurisdiction of this appeal.

¶ 18    We first address the parties' disagreement over the appropriate standard of review on appeal. Walgreens asserts that this court should review the trial court's order staying the indemnification counts *de novo* because the court's order did not provide any legal analysis or factual findings. Prime responds that the court's order should be reviewed for an abuse of discretion because the court's written opinion considered the parties' factual arguments before

granting the stay. We agree with Prime that the appropriate standard of review is an abuse of discretion.

¶ 19 Generally, in an interlocutory appeal from an order granting a motion to stay proceedings, the scope of review is limited to an examination of whether the circuit court abused its discretion in granting the stay. *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 36 (2008). Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently. *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 26. A trial court abuses its discretion when its "ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." (Internal quotation marks omitted.) *Id.* " 'Abuse of discretion' is the most deferential standard of review—next to no review at all—and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). On interlocutory appeal, the reviewing court determines whether there was a sufficient showing made to the circuit court to sustain its order granting or denying the relief sought. *Boeing*, 385 Ill. App. 3d at 36.

¶ 20 We disagree with Walgreens's assertion that this court should review the trial court's order *de novo*. Walgreens cites *Hayes v. Victory Centre of Melrose Park SLF, Inc.*, 2017 IL App (1st) 162207, ¶ 11, in support. However, in *Hayes*, the reviewing court observed that "the facts at issue are not in dispute, and the circuit court made no findings in denying the stay." *Id.* Here, there is a dispute over the facts, namely whether the contractual indemnification claims overlap with the fraud claims in HCSC's underlying complaint such that the third-party action should be pursued simultaneously with the HCSC action. While the trial court's order is brief, the court concluded that it could not reach the indemnification claims until the underlying action has been

resolved. Therefore, the court's order contained both a factual and legal analysis. We also reject Walgreens's contention that *de novo* review is appropriate because the trial court "effectively held that a stay was required as a matter of Illinois law." The trial court made no such finding, as discussed in more depth below. Accordingly, we review the trial court's order granting a stay for an abuse of discretion.

¶ 21     An order staying proceedings preserves the status quo existing on the date of its entry and does not address the merits of the underlying dispute. *Kaden v. Pucinski*, 263 Ill. App. 3d 611, 615 (1994). The trial court may stay proceedings as part of its inherent authority to control the disposition of cases and may consider factors such as the orderly administration of justice and judicial economy in deciding whether to grant a stay. *Kenny v. Kenny Industries, Inc.*, 406 Ill. App. 3d 56, 65 (2010). The party requesting a stay bears the burden of showing that the benefits of a stay outweigh any potential harm that may accrue to the party against whom it is operative, and if there is a fair possibility that the stay will damage the opposing party, the party seeking the stay must make a clear showing of hardship or inequity from being required to go forward with the case. *Boeing*, 385 Ill. App. 3d at 36.

¶ 22     At issue in this case is the trial court's stay of Walgreens's third-party indemnification claims. A third-party claim is a procedural device by which a defendant in a lawsuit is permitted to bring an additional party into the action. *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391, 399 (2001); see 735 ILCS 5/2-406(b) (West 2020). "The purpose of this procedure is to avoid a multiplicity of litigation and to provide a means of resolving in one action an entire matter arising from a single set of facts." *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 502 (1996). "Although its purpose is the reduction of litigation, third-party actions cannot be used to maintain an entirely separate and independent claim against a third party, even if it arises out of

the same general set of facts as the main claim." *People v. Brockman*, 143 Ill. 2d 351, 364-65 (1991).

¶ 23    "Contribution and indemnity are the basis of most counterclaims, providing mutually exclusive remedies for allocating the plaintiff's damages." *Bray v. City of Chicago*, 2022 IL App (1st) 201214, ¶ 27. "While contribution apportions the distribution of loss among joint tortfeasors based on relative degrees of fault, indemnity shifts the entire loss to the joint tortfeasor who was actually at fault." *Id.*

¶ 24    Under Illinois law, a defendant entitled to bring an indemnity action has " 'a choice of filing a third-party complaint against a party who may be liable to indemnify him as part of the original action [citation], or of waiting until the original action is over and filing a separate action for indemnity if he is found liable.' " *Guzman*, 196 Ill. 2d at 399-400 (quoting *Anixter Brothers, Inc. v. Central Steel & Wire Co.*, 123 Ill. App. 3d 947, 953 (1984), citing Ill. Rev. Stat. 1983, ch. 110, ¶ 2-406(b)). A third-party complaint must state a cause of action and disclose some relationship upon which a duty to indemnify may be predicated. *Kerschner*, 282 Ill. App. 3d at 504.

> " 'In effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined. It follows that the cause of action for an implied contract of indemnity does not accrue until the defendant has a judgment entered against him or until he settles the claim made against him. Only at that point does the cause of action for indemnity accrue and the statute of limitations begin to run.' " *Guzman*, 196 Ill. 2d at 400 (quoting *Anixter Brothers*, 123 Ill.

App. 3d at 953).

¶ 25 "The right to indemnity may be express, as in a contractual provision, or may be implied in law, arising in situations in which a promise to indemnify can be implied from the relationship between the parties." *Kerschner*, 282 Ill. App. 3d at 502. "To be legally sufficient, an indemnity claim must allege a pretort relationship between the counterplaintiff and the counterdefendant upon which a duty to indemnity may be predicated." *Bray*, 2022 IL App (1st) 201214, ¶ 28. This case involves an express indemnity claim because the duty to indemnify is a provision in the 2008 contract.

¶ 26 Here, Prime sought a stay of Walgreens's indemnity counts because any duty it would have to indemnify Walgreens is not yet ripe. Prime contended that discovery into its contract with Walgreens used to raise the indemnification claims differs from the type of discovery needed to resolve HCSC's fraud claims against Walgreens. According to Prime, the indemnification counts would only ripen for adjudication if and when Walgreens was first found liable to HCSC.

¶ 27 As already pointed out above, Walgreens's indemnity counts arose from a provision in the 2008 contract between itself and Prime. In section 8.2 of the 2008 contract, Prime agreed to "indemnify and hold [Walgreens] harmless from and against all claims or suits asserted by a third party *** arising out of or resulting from Prime's breach of or any negligent act or omission of Prime relating to this Agreement." According to Walgreens, if HCSC's claims are found to have merit, then Prime will have breached its obligations under section 3.3 of the 2008 contract, which related to Prime accurately describing and representing the role of Walgreens in all communications, including marketing and advertising materials. As noted, Walgreens also alleged the commission of negligent acts or omissions by Prime in relation to its performance

under the 2008 contract by (1) failing to inform HCSC of Walgreens's actual U&C reporting obligations, (2) failing to inform HCSC that Walgreens does not include PSC pricing in its U&C reporting, and (3) Prime's understanding of Walgreens's U&C reporting obligations, as well as Prime's failure to correct HCSC's "misapprehensions" of Walgreens's U&C reporting obligations.

¶ 28     This legal framework notwithstanding, Walgreens devotes much of its brief to asserting procedural or tangential issues rather than addressing whether the stay was improperly granted. Walgreens first discusses Illinois's policy for the filing of third-party claims by citing section 2-406 of the Code of Civil Procedure (735 ILS 5/2-406 (West 2020)) and Illinois Pattern Jury Instructions (IPI). In this discussion, Walgreens focuses on its assertion that it has an "explicit statutory right to pursue its third-party indemnity claims now, not later." It is undisputed that third-party claims may be filed during the pendency of the underlying action. See *id.* § 2-406(b) ("a defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her"). In its order, the trial court recognized that Walgreens's indemnity claims were properly filed and could stand but found the claims were not ripe for adjudication. No question about its right to file a third-party complaint has been raised. We also find Walgreens's reliance on jury instructions to be disingenuous. While Walgreens is correct that the IPI contains jury instructions for third-party indemnity claims considered simultaneously with the underlying actions, the IPI also contains instructions for when the indemnity claims are heard separately after the underlying judgment has been entered. See Illinois Pattern Jury Instructions, Civil, Nos. 500.04, 500.05 (2006). The IPI provides instructions for all alternatives for the consideration of indemnity claims and does not indicate support for one preferred trial method. Since Walgreens was

allowed to file its third-party indemnity counts under section 2-406, its argument on this point is misplaced.

¶ 29    We further find Walgreens's contention that the trial court held that the stay was mandatory is likewise without merit. According to Walgreens, the trial court's use of the word "must" indicated that the court held the stay was required. When the word is read in context, it is clear that the court did not make such a finding: "However, the Court cannot make a determination on the indemnity claims until the underlying claims of HCSC's complaint are resolved. Therefore, [the indemnity counts] *must* be stayed pending resolution of HCSC's claims." (Emphasis added.) The court found the counts "must be stayed" because the indemnity claims could not be reached until liability in HCSC's complaint has been reached. Nothing in the court's decision suggested that the court found the stay was required, and we reject Walgreens's argument on this point.

¶ 30    Walgreens also argues that Prime failed to seek a stay in its motion to dismiss and that error is fatal. As a general rule, arguments for dismissal that are not raised at the trial court level are waived and cannot be raised for the first time on appeal. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006). However, Prime moved to dismiss Walgreens's third-party complaint "for the reasons set forth in the accompanying memorandum of law." In its memorandum, Prime explicitly requested a stay for the indemnification claims as an alternative relief to dismissal. Walgreens responded to the request for a stay in the trial court and Prime further addressed the alternative relief of a stay in its reply memorandum. Prime's argument in its motion to dismiss was equally applicable to its request for a stay as alternative relief. The trial court had the opportunity to consider both parties' briefs and arguments before reaching its decision. Thus, no error occurred because Prime's request for the alternative relief of a stay was

13

raised and fully considered by the trial court.

¶ 31    Notwithstanding Walgreens's tangential arguments, the salient issue before us is whether the trial court abused its discretion in staying the indemnity claims while the underlying action proceeds. The party requesting the stay must make a sufficient showing to the circuit court that the stay is justified. *TIG Insurance Co.*, 389 Ill. App. 3d at 372. As stated above, the party requesting a stay bears the burden of showing that the benefits of a stay outweigh any potential harm that may accrue to the party against whom it is operative, and if there is a fair possibility that the stay will work damage to the opposing party, the party seeking the stay must make a clear showing of hardship or inequity from being required to go forward with the case. *Boeing*, 385 Ill. App. 3d at 36. The reviewing court looks only to the sufficiency of the evidence, rather than decide any "controverted rights" or merits of the case, in determining whether the circuit court abused its discretion. (Internal quotation marks omitted.) *Id.*

¶ 32    Walgreens argues that Prime failed to support its request for a stay with clear and convincing evidence. " '[A] party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.' " *Kaden*, 263 Ill. App. 3d at 616 (quoting *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595 (1991)). Walgreens contends that it will be prejudiced by the stay and judicial resources will be wasted by delaying the resolution of its third-party claims. According to Walgreens, the stay will increase its litigation costs and raises the risk of inconsistent factual determinations and judgments.

¶ 33    Prime maintains that it made the requisite showing to support the stay. As it argued before the trial court, Prime asserts that because Walgreens's indemnification counts are based on provisions in the contract that raise separate questions from whether Walgreens defrauded

HCSC over drug prices, it would be a burden on Prime to participate in the discovery of the fraud claims. Prime further asserts that, absent a finding of liability against Walgreens, the indemnification counts are premature and could be held for naught. The trial court heard these arguments from both sides before granting Prime's request for a stay.

¶ 34    "With respect to a stay, a trial court does not act 'outside its discretion' by staying a proceeding in favor of another proceeding 'that could dispose of significant issues.' " *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 40 (quoting *Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359, ¶ 62). "A stay is generally considered 'a sound exercise of discretion' if the other proceeding 'has the potential of being completely dispositive.' " *Id.* (quoting *Khan*, 2012 IL App (4th) 120359, ¶ 60).

¶ 35    In this case, the underlying HCSC action has the potential of being completely dispositive of Walgreens's indemnification claims. If Walgreens is not found liable, the indemnification claims would be moot. The trial court reached the same conclusion and found no determination on the indemnity claims could be made until the HCSC claims are resolved. It would be a burden on Prime to participate in the underlying actions when it may have no liability to Walgreens. In contrast, Walgreens still has the remedy of indemnification if and when any liability is entered against it in the HCSC claims. We also disagree with Walgreens's contention regarding inconsistent verdicts. Even if tried simultaneously, a fact finder could find that Walgreens was liable to HCSC, but Prime was not liable to Walgreens. One finding does not dictate the other since the allegations turn on different theories of liability. Given these circumstances, we find the trial court acted within its discretion in staying the indemnification counts.

¶ 36    We also find Walgreens's attempt to distinguish *Cholipski* lacks merit. In *Cholipski*, the plaintiff brought a negligence action against multiple defendants related to his work-related

injuries at a construction site. The defendants included the general contractor, the subcontractor that employed the plaintiff's employer, and the company that placed the items causing the injury. *Id.* ¶¶ 10-11. Three years into the action, the defendants filed a contribution claim against the plaintiff's physician for medical malpractice, asserting that the doctor's actions caused the plaintiff to be disabled. *Id.* ¶¶ 13-14. The trial court subsequently allowed the third-party claim to be filed but granted the plaintiff's request for severance of the claims and a stay. *Id.* ¶ 19.

¶ 37    On appeal, the reviewing court affirmed the trial court's order granting a stay. *Id.* ¶ 27. The court first found that the trial court did not abuse its discretion because the "defendants' alleged negligence in the workplace is a significant and wholly separate issue from the doctor's alleged medical malpractice." *Id.* ¶ 41. The court also discouraged the delaying tactics of the defendants in filing the contribution claim more than three years after the initial negligence complaint. *Id.* ¶¶ 42-44. The reviewing court further found, "[t]here is no hard and fast rule about joint trials but rather a policy preference for a joint trial which is still left up to the trial court's discretion to weigh among other factors." *Id.* ¶ 52 (citing *Cook v. General Electric Co.*, 146 Ill. 2d 548, 560 (1992)).

¶ 38    In the present case, the question of whether Prime breached its marketing-related obligations or committed negligent acts or omissions in its performance under the 2008 contract "is a significant and wholly separate issue" from the fraud claims alleged by HCSC related to Walgreens's reporting of U&C prices for prescription drugs. The trial court's decision to stay the indemnification counts was not arbitrary, fanciful, or unreasonable, or such that no reasonable person would take the same view. See *Mahmood*, 2021 IL App (1st) 200584, ¶ 26.

¶ 39    Finally, Walgreens raises an alternative argument that its anticipatory repudiation indemnification count is ripe and can be considered independent of the underlying claims.

Specifically, Walgreens argues that Prime's anticipatory repudiation of its duty to indemnify is causing present harm to Walgreens by having to defend itself against HCSC.

¶ 40    "Illinois law permits a party to recover damages from a wrongdoer for anticipatory breach of contract. However, for there to be an anticipatory breach, the law requires that there be a positive and unequivocal manifestation of a party's intent not to render the performance promised under the contract *when the time fixed in the contract arrives*." (Emphasis added.) *Bituminous Casualty Corp. v. Commercial Union Insurance Co.*, 273 Ill. App. 3d 923, 930 (1995). Here, the error in Walgreens's argument is that the duty to indemnify has not yet accrued.

¶ 41    Moreover, if Prime is liable to Walgreens without any liability finding on the underlying HCSC claims, then this is not a claim for derivative liability. A third-party claim is premised upon derivative liability. *Kerschner*, 282 Ill. App. 3d at 502. "In a proper third-party action, the liability of the third-party defendant is dependent on the liability of the third-party plaintiff to the original plaintiff." *Brockman*, 143 Ill. 2d at 368. "The proper focus for determining section 2-406 derivative liability is on the substance of the complaint." *Id.* As Walgreens has already observed, section 2-406(b) states: "a defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the *plaintiff's claim* against him or her." (Emphasis added.) 735 ILCS 5/2-406(b) (West 2020).

¶ 42    According to Walgreens, Prime would be required to indemnify Walgreens independent of any liability by Walgreens to HCSC. This contention is counter to the well-settled cases cited above on the duty to indemnify. Walgreens does not cite any relevant case law in which a duty to indemnify under anticipatory repudiation had accrued before the liability determination in the underlying action. See *Curtis Casket Co. v. D.A. Brown & Co.*, 259 Ill. App. 3d 800, 806 (1994)

17

(the court considered whether one party had repudiated a real estate contract, excusing the other party from timely performance); *Pekin Insurance Co. v. Johnson-Downs Construction, Inc.*, 2017 IL App (3d) 160601, ¶ 13 (reviewing the trial court's stay of a third-party declaratory judgment claim regarding an insurance company's duty to defend); *Bituminous*, 273 Ill. App. 3d at 924 (after the underlying action was settled, the reviewing court considered the summary judgment on an anticipatory breach of contract counterclaim); *Wilmette Partners v. Hamel*, 230 Ill. App. 3d 248, 250-51 (1992) (appeal following a bench trial which held that the plaintiff had breached one construction-related contract and anticipatorily breached a second construction contract). None of these cases considered a third-party indemnity claim and Walgreens's reliance upon them is misplaced.

¶ 43    We also observe that Walgreens's anticipatory repudiation claim for indemnification is premised upon the same allegations as its declaratory judgment claim. Both claims allege that Prime breached the 2008 contract and committed negligent acts or omissions related to its performance under the contract. With both claims based on the same alleged wrongdoing, both claims still require the requisite liability judgment to ripen. As previously stated, a cause of action for indemnity " 'does not accrue until the defendant has a judgment entered against him or until he settles the claim made against him. Only at that point does the cause of action for indemnity accrue and the statute of limitations begin to run.' " *Guzman*, 196 Ill. 2d at 400 (quoting *Anixter Brothers*, 123 Ill. App. 3d at 953). Since no liability findings have been made against Walgreens, any duty to indemnify is premature, including its indemnity claim based on anticipatory repudiation. Accordingly, this claim fails.

¶ 44    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

18

¶ 45    Affirmed.

***Health Care Service Corp. v. Walgreen Co.*, 2023 IL App (1st) 230547**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-000621; the Hon. Caroline K. Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey J. Bushofsky, Laura G. Hoey, Timothy R. Farrell, and Charles D. Zagnoli, of Ropes & Gray LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kathleen A. Hill and Andrew L. Evans, of Salvatore Prescott Porter & Porter PLLC, of Evanston, and Robert J. Gilbertson (*pro hac vice*), Virginia R. McCalmont (*pro hac vice*), and Caitlinrose H. Fisher (*pro hac vice*), of Forsgren Fisher McCalmont DeMarea Tysver LLP, of Minneapolis, Minnesota, for appellee. |